THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHELE TANGE,

                Plaintiff,

     v.

THE HOME DEPOT,

                Defendant.

CASE NO. C10-1286-JCC

ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. No. 39). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and grants the motion for the reasons explained herein.

I.     **BACKGROUND**

This case arises out of Plaintiff Michele Tange's termination as an employee of Defendant The Home Depot. Plaintiff began employment at the Lander Home Depot store in Seattle, Washington, as an entry-level cashier in 2001. (Dkt. No. 48 at 5.) Over the next several years she was promoted to department supervisor and, in August 2006, to assistant store manager, a salaried management position. (*Id.* at 30.) In that capacity, Plaintiff was familiar with Home Depot's policy of zero tolerance for harassment and discrimination, which she conveyed to the hourly associates she supervised. (Dkt. No. 41-1 at 50-51.) She also received training on the importance of maintaining the confidentiality of information obtained through investigations

1   of employee misconduct. (*Id.* at 58.)

2        Steve Williamson became the Lander store manager and Plaintiff's immediate supervisor

3   in April 2008. Plaintiff alleges that Williamson made derogatory statements about women,

4   including that "it's easier for women to make lunches and bring them than it is for men." (Dkt.

5   No. 48 at 69.) Plaintiff also says that Williamson commented to her about the body of a female

6   customer. (*Id.*) At some point after Williamson became store manager, Plaintiff's relationship

7   with him became strained. According to Plaintiff, Williamson was "dismissive and disrespectful"

8   of her, abruptly interrupting her during a conversation and leaving to speak with an hourly

9   associate. (*Id.* at 61; Dkt. No. 46 at 6.) On another occasion during a staff meeting, Williamson

10  openly expressed gratitude to a male assistant store manager for attending the meeting on his day

11  off but said nothing to Plaintiff, who also had come in on her day off. (Dkt. No. 48 at 71-72.)

12       These incidents prompted Plaintiff to complain about Williamson to Leigh Lin, a human

13  resources manager for Home Depot. Plaintiff told Lin during a meeting that "Steve was treating

14  me differently than he does his other assistant managers." (*Id.* at 61.) According to Plaintiff, Lin

15  apologized to her, told her that she had "observed behavior like that," and promised to discuss

16  the issues with Williamson. (*Id.*) Lin did meet with Williamson, who subsequently called

17  Plaintiff into his office to discuss her complaints. (Dkt. No. 48-2 at 5.) According to Plaintiff,

18  Williamson was "aggressive" during the meeting and told Plaintiff that "it was brought to his

19  attention that he treats women differently." (Dkt. No. 48 at 62.) Plaintiff says she responded,

20  "I'm not responsible for how other people feel, but . . . I do feel that you sometimes do treat me

21  differently." (*Id.*) She gave the example of how he had interrupted her to speak with another

22  employee and had never resumed the conversation. Williamson told her that he was unaware of

23  any difference in his treatment of Plaintiff and asked her to notify him if she felt that way in the

24  future. (*Id.*)

25       In August 2009, Plaintiff received two disciplinary notices for policy violations. The first

26  was for hosting a party at her home that included subordinates and hourly associates, some of

whom apparently became heavily intoxicated and came close to injuring themselves. (Dkt. No. 41-1 at 20-21; Dkt. No. 48-2 at 53-57.) The second was for failing to secure the store's vault at the end of the day in accordance with closing procedures. (Dkt. No. 41-1 at 23.) Plaintiff disputes the basis for the first violation but acknowledges that she was appropriately disciplined for the second violation. (Dkt. No. 48 at 57; Dkt. No. 41-1 at 75.)

Plaintiff was further disciplined in December 2009 for breaches of Home Depot's confidentiality policy. On December 10, 2009, Plaintiff arranged for an hourly associate to undergo a drug test after the associate had hit a car in the parking lot with a shopping cart. Plaintiff asked Kenny Rohaly, a department supervisor, to accompany the associate to the drug test. (Dkt. No. 48 at 65.) Upon Rohaly's return to the store, he asked Plaintiff why the drug test had been ordered, and Plaintiff told him about the incident in the parking lot. (*Id.*) Plaintiff concedes that the information she disclosed to Rohaly was confidential. (Dkt. No. 41-1 at 84.) Williamson issued a discipline notice to Plaintiff because of this disclosure. (*Id.* at 25.)

On December 16, Plaintiff was training a new cashier on closing procedures. While closing the self-checkout registers, Plaintiff and the cashier failed to secure a significant amount of cash, which was left out overnight but subsequently recovered. (*Id.* at 53-54.) Lin and Amber Hodge, a loss prevention manager, investigated the mishandled cash and met with Plaintiff about it. Plaintiff understood that the meeting and the investigation were confidential. (*Id.* at 56.) Lin informed her supervisor, Tia Jackson-Berryman, about the incident, and Jackson-Berryman also met personally with Plaintiff. (Dkt. No. 48 at 49.) According to Plaintiff, Jackson-Berryman told her "it did not look good" for her after this most recent incident, and Plaintiff protested that other managers had mistakenly left cash out overnight. (*Id.* at 51.) Jackson-Berryman questioned an accounting employee regarding that allegation and was told that at least one other assistant store manager had also failed to secure cash overnight. (Dkt. No. 41-2 at 17.)

The following day, Plaintiff discussed the cash incident with Rafael Martinez, a loss prevention associate, and told him that she was facing possible termination. (Dkt. No. 48 at 52.)

1    Martinez had not been involved with the investigation of the misplaced cash and knew nothing

2    of any potential disciplinary action against Plaintiff or the cashier who was also involved in the

3    episode. He informed Hodge, his direct supervisor, about what Plaintiff had told him, and Hodge

4    asked him to send her an account of the conversation via e-mail. (Dkt. No. 41-2 at 4.) Hodge

5    forwarded the e-mail to Jackson-Berryman, who called Plaintiff to confirm that she had

6    discussed the investigation with Martinez. Plaintiff admitted to doing so. (Dkt. No. 48 at 52.)

7    Jackson-Berryman then took steps to terminate Plaintiff's employment, which occurred officially

8    on January 4, 2010. (Dkt. No. 41-1 at 37.)

9         Plaintiff's Amended Complaint alleges sex discrimination under Washington's Law

10   Against Discrimination, age discrimination, retaliatory discharge, and violations of Washington's

11   Equal Pay Act. (Dkt. No. 26 at 5-6.) In her opposition brief, Plaintiff abandoned her age

12   discrimination and Equal Pay Act claims. (Dkt. No. 46 at 4.) The Court therefore grants

13   summary judgment as to those claims and addresses only the sex discrimination and retaliation

14   claims.

15   **II.    DISCUSSION**

16        Summary judgment is proper "if the movant shows that there is no genuine issue as to

17   any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

18   56(a). The Court must view all evidence in the light most favorable to the nonmoving party and

19   draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S.

20   242, 248–50 (1986). A genuine issue of material fact exists where there is sufficient evidence for

21   a reasonable fact finder to find for the nonmoving party. *Id.* at 248. The inquiry is "whether the

22   evidence presents a sufficient disagreement to require submission to a jury or whether it is so

23   one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

24        **A.    Sex Discrimination**

25        For claims alleging sex discrimination under Washington's Law Against Discrimination,

26   RCW 49.60.010 *et seq.*, Washington courts utilize the  burden-shifting scheme set forth in

1   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kastanis v. Educ. Employees*

2   *Credit Union*, 859 P.2d 26, 30 (Wash. 1993). Under *McDonnell Douglas*, the plaintiff must first

3   make out a prima facie case of discrimination by showing that she (1) was qualified for the

4   position and doing satisfactory work; (2) is a member of a protected class; (3) was subjected to

5   an adverse employment action; and (4) was treated less favorably than similarly situated

6   individuals who are not members of the protected class. 411 U.S. at 802; *see also Grimwood v.*

7   *Univ. of Puget Sound, Inc.*, 753 P.2d 517, 521 (Wash. 1988). The defendant must then show a

8   legitimate nondiscriminatory reason for the discharge. If the defendant meets that burden, the

9   plaintiff must in turn show that the articulated reason was merely a pretext for a discriminatory

10  purpose. *McDonnell Douglas*, 411 U.S. at 802-04.

11      Here, Plaintiff has not made out a prima facie case of sex discrimination because she has

12  not shown that she was performing satisfactorily. The Home Depot code of conduct states that

13  "disclosing confidential or proprietary information without specific authorization" is a Major

14  Work Rule Violation, which "will normally result in termination of employment for a first

15  offense." (Dkt. No. 50-1 at 37-38.) Plaintiff was aware of, and had received training on, the

16  importance of this confidentiality policy. (Dkt. No. 41-1 at 15, 57-58.) Nonetheless, the record

17  establishes that Plaintiff violated this policy twice in December 2009. On the first occasion, she

18  disclosed information to a department supervisor about the conduct of an hourly associate.

19  Plaintiff admits that the information was confidential and that Rohaly, the department supervisor,

20  did not need to know the information. (*Id.* at 84-85.) She also testified that the discipline notice

21  she received as a result of the incident was issued "according to the company policies" and that

22  she did not disagree with the notice. (*Id.* at 86.) Further, Plaintiff testified that she "understood,

23  following this performance/discipline notice that [she] should only discuss confidential

24  information with persons who have a legitimate business-related need to know." (*Id.* at 86-87.)

25      Despite this discipline and the training she had previously undergone, Plaintiff violated

26  the confidentiality policy again within weeks when she disclosed information to an associate

1  about the investigation into mishandled cash. Plaintiff admits that she understood the

2  investigation to be confidential and that she should not have discussed it with anyone. (*Id.* at 56.)

3  She nonetheless spoke openly about the investigation to Martinez, an associate who was not

4  involved in the incident. (Dkt. No. 48 at 52-53.) Martinez's contemporaneous written account of

5  his conversation with Plaintiff indicates that she divulged details of the incident and identified

6  the head cashier whom she had been assisting with closing procedures. (Dkt. No. 41-1 at 35.)

7  Although Plaintiff explains that she assumed Martinez, a loss prevention associate, already knew

8  about the investigation, she offers no justification for broaching the subject with him in the first

9  place, particularly given the fact that she had so recently been counseled regarding the

10  importance of confidentiality.

11  Ultimately, Plaintiff does not dispute that she disclosed confidential information to

12  employees who had no need to know the information, violating Home Depot's code of conduct

13  twice in December 2009. Such breaches of company policy are not consistent with satisfactory

14  performance. *See Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1208 (9th Cir. 2008) (no

15  reasonable juror could find that plaintiff was performing satisfactorily when he violated company

16  policy against solicitation on company property after being warned not to do so). Plaintiff has

17  failed to establish a prima facie case of sex discrimination, and summary judgment is appropriate

18  on that basis alone.

19  Even assuming Plaintiff could make out a prima facie case, she has not raised a genuine

20  issue of fact as to whether Home Depot's stated reasons for discharging her were pretextual. An

21  employer's reasons may be pretextual "if the proffered justifications have no basis in fact, are

22  unreasonable grounds upon which to base the termination, or were not motivating factors in

23  employment decisions for other similarly-situated employees." *Griffith v. Schnitzer Steel Indus.,*

24  *Inc.*, 128 Wash. App. 438, 447 (2005). Plaintiff has not met her burden under this standard. As

25  the foregoing discussion makes clear, Home Depot's proffered justification was Plaintiff's

26  breach of the confidentiality policy, the material facts of which are not in dispute. Further, the

ORDER
PAGE - 6

1   code of conduct explicitly identifies such confidentiality breaches as grounds for termination,

2   and Plaintiff does not argue that such a policy is unreasonable. Finally, Plaintiff offers no

3   evidence that Home Depot disregarded similar violations of its confidentiality policy in making

4   employment decisions related to other management-level employees.

5       Plaintiff nonetheless argues that Williamson's demeaning comments and his purported

6   role in her termination suffice to show pretext. (Dkt. No. 46 at 21-22.) However, notwithstanding

7   Plaintiff's testimony that Williamson made several derogatory comments about women—which

8   the Court takes as true for the purposes of Defendant's motion—the uncontroverted record

9   reflects that Jackson-Berryman, not Williamson, made the decision to terminate Plaintiff's

10  employment. Indeed, several of Plaintiff's assertions regarding Williamson's involvement in the

11  termination are inconsistent with the record.[1] Plaintiff first suggests that Williamson "caused her

12  to be investigated" following the episode that resulted in mishandled cash. (*See* Dkt. No. 46 at

13  13.) But the record is clear that a "vault associate" discovered that cash was missing and notified

14  assistant store manager Raymond Spicer. (Dkt. No. 48-2 at 63.) Spicer reported the missing cash

15  to Williamson without any knowledge of who misplaced the cash. (*Id.*) Williamson, in turn,

16  asked Lin and Hodge to investigate, but he did not know that Plaintiff was involved in the

17  incident at that point. (Dkt. No. 48 at 37.) Only when Lin and Hodge reviewed closed circuit

18  video footage did Plaintiff's involvement become apparent. (Dkt. No. 48-2 at 10, 33.) Lin, not

19  Williamson, informed Jackson-Berryman of Plaintiff's role. (*Id.* at 43.)

20      Plaintiff also asserts that it was not until Jackson-Berryman spoke with Williamson that

21  she supported the idea of terminating Plaintiff. (Dkt. No. 46 at 15.) But Jackson-Berryman's

22  uncontroverted testimony is that she was considering firing Plaintiff before Williamson had any

23  involvement in addressing the mishandled cash. (Dkt. No. 48-2 at 43.) Jackson-Berryman

24  _____

25      [1] The Court is troubled by several instances in Plaintiff's briefing in which she distorts or
26  mischaracterizes the record. (*See* Dkt. No. 50 at 1-3.) The Court reviews record citations
    independently, and such distortion benefits neither Plaintiff nor the Court.

1  learned from Hodge, not Williamson, that Plaintiff had discussed the investigation with

2  Martinez. (*Id.* at 45.) She confronted Plaintiff directly before informing Williamson and Lin

3  about Plaintiff's breach of the confidentiality policy. (*Id.* at 46.)

4      Finally, Plaintiff speculates that Williamson reminded Jackson-Berryman of the prior

5  incident in which Plaintiff had violated the confidentiality policy. (Dkt. No. 46 at 15.) Jackson-

6  Berryman, however, testified that both Lin and Williamson raised the earlier breach in a

7  conversation with her. (Dkt. No. 48-2 at 47.) She also testified that she was already aware of that

8  breach. (Dkt. No. 50-1 at 5.) That testimony is uncontroverted, and there is no dispute that the

9  decision to terminate Plaintiff's employment was Jackson-Berryman's alone. (*Id.* at 10, 47; Dkt.

10  No. 48 at 33.) The record simply does not support Plaintiff's contention that Williamson played

11  anything more than a bit part in the decision to fire Plaintiff. And there is no allegation that

12  Jackson-Berryman—the supervisor who had originally promoted Plaintiff to assistant store

13  manager—was motivated in any way by discriminatory purpose in deciding to fire her. Plaintiff

14  therefore cannot show that gender was a substantial factor in the decision to terminate her

15  employment. *See Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wash. 2d 302, 310 (1995) (in

16  order to prevail on gender discrimination claim under WLAD, a plaintiff must prove that gender

17  was a "substantial factor" in employer's adverse employment decision).

18      Because Plaintiff has failed to advance a prima facie case of sex discrimination, and

19  because she has not raised a genuine issue as to whether the stated reasons for terminating her

20  employment were pretextual, Home Depot is entitled to summary judgment on Plaintiff's sex

21  discrimination claim.

22      **B.    Retaliation**

23      Plaintiff also claims that Home Depot retaliated against her for complaining about

24  Williamson's conduct. A plaintiff alleging retaliation must show that (1) she engaged in

25  statutorily protected activity; (2) an adverse employment action was taken; and (3) there was a

26  causal link between the employee's activity and the employer's adverse action. *Estevez v.*

1  *Faculty Club of Univ. of Wash.*, 120 P.3d 579, 589 (Wash. Ct. App. 2005). Once the plaintiff

2  establishes a prima facie case of retaliation, the burden shifts to the employer to produce

3  evidence of a legitimate reason for the discharge. If the employer produces such evidence, the

4  burden shifts back to the plaintiff to show a genuine issue of fact as to whether the proffered

5  reason was merely a pretext. *Campbell v. State*, 129 Wash. App. 10, 22 (2005). Here, Plaintiff

6  can establish neither a prima facie case nor a genuine issue as to pretext.

7      First, Plaintiff has not shown that she engaged in a protected activity. An employee

8  engages in a statutorily protected activity when she opposes "any practices forbidden" by

9  Washington's Law Against Discrimination. RCW 49.60.210. Here, Plaintiff's own testimony

10 establishes that she complained to Lin about Williamson's treatment of her personally but not

11 about his treatment of her as a woman. She told Lin that Williamson treated her "differently than

12 he does his other assistant managers." (Dkt. No. 48 at 61.) Plaintiff's testimony about her later

13 conversation with Williamson is consistent with this conclusion. (*Id.* at 62, 64 ("I was talking to

14 him about treating me differently").) When Lin asked for an example, Plaintiff stated that

15 Williamson had walked away from her abruptly during a conversation—evidence of a personal

16 conflict but not of discrimination on the basis of sex. Plaintiff repeated that example when

17 Williamson himself pressed her for details on how he treated her differently. (*Id.* at 62.) Given

18 this testimony, Plaintiff's complaint to Lin and her subsequent conversation with Williamson did

19 not constitute protected activity. *See, e.g.*, *Graves v. Dep't of Game*, 76 Wash. App. 705, 712

20 (1994) (complaints about insufficient training and unrealistic expectations did not amount to

21 complaints of discrimination on the basis of sex).

22      Second, Plaintiff has not shown a causal connection between her complaint to Lin and

23 her termination—the only cognizable adverse employment action here. An adverse employment

24 action requires "a change in employment conditions that is more than an inconvenience or

25 alteration of job responsibilities," such as reduced workload or pay. *Campbell*, 129 Wash. App.

26 at 22. Discharge is *per se* adverse, but actions that are "disciplinary or investigatory in nature . . .

ORDER
PAGE - 9

1  do not constitute adverse employment actions." *Kirby v. City of Tacoma*, 124 Wash. App. 454,

2  465 (2004). Other than her termination, Plaintiff has offered no evidence of adverse employment

3  actions within this definition, and she has not alleged that her workload or pay were altered or

4  reduced as a result of her complaint.

5       As was the case with Plaintiff's discrimination claim, Plaintiff cannot show that

6  retaliation for her complaint was a substantial factor in the decision to discharge her. *See*

7  *Francom v. Costco Wholesale Corp.*, 98 Wash. App. 845, 862 (2000) (retaliation need not be the

8  "but for" cause of adverse action, but it must be "at least a substantial factor" in the action).

9  Plaintiff admitted to conduct that constituted two separate breaches of Home Depot's

10  confidentiality policy in December 2009. She does not allege that Jackson-Berryman—the

11  supervisor who made the decision to fire her—acted with retaliatory purpose. Moreover,

12  Plaintiff's contention that Williamson retaliated against her by citing her for policy violations in

13  summer 2009 ignores the fact that such violations did not factor into her termination. Finally, the

14  considerable time—over a year—between Plaintiff's complaint and her termination suggests

15  strongly that there was no causal nexus between those events. *See id.* at 863.

16       Plaintiff has not made out a prima facie case of retaliatory discharge. For the reasons

17  stated in the Court's analysis of Plaintiff's discrimination claim, she also has not raised a genuine

18  issue as to whether Home Depot's stated reasons for discharging her were pretextual. The Court

19  therefore grants summary judgment as to the retaliation claim as well.

20  **III.   CONCLUSION**

21       For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 39) is

22  GRANTED.

23       //

24       //

25       //

26       //

DATED this 15th day of December 2011.

John C. Coughenour
UNITED STATES DISTRICT JUDGE